HULL, LANIER & CO. v. M. E. CARTER and others.

### *Surety and Principal.*

Defendant merchant became indebted to plaintiff for goods sold and delivered in the sum of $650, and afterwards ordered more goods, but plaintiff declined to send them unless acceptances were given, which was done in drafts covering the *entire* indebtedness. Plaintiff filled the order for additional goods, only in part, owing to defendant's failure in business; *Held* in an action against the surety acceptors, that the violated promise to the principal debtor to fill the order, does not dis-

charge the sureties and annul their contract, but that any claim for damages thereby incurred may be set up as a counter-claim.

(*Tilghman* v. *West*, 8 Ired. Eq., 183; *Saunderson* v. *Ballance*, 2 Jones Eq., 322, cited and approved.)

CIVIL ACTION tried at Spring Term, 1882, of BUNCOMBE Superior Court, before *Gilliam, J.*

W. C. Davidson, doing a mercantile business at Asheville, in the course of which he had become indebted to the plaintiffs, merchants at Baltimore, in or about the sum of $650, on April 7th, 1876, sent them by letter an order for more goods. The plaintiffs in their answer, four days afterwards, declined to fill the order, and assigned as a reason for not doing so, on the usual terms of credit, the overdue and unsettled outstanding indebtedness. So much of this letter as is material to the controversy arising upon the pleadings is in these words:

"We suggested in our last, acceptances on M. E. Carter, and we thought, should you want a bill of any extent you would certainly arrange for the balance. We are willing to sell you a small bill, say two or three hundred dollars, on our usual time. You will give us M. E. Carter's acceptance, say at 3, 4, 5 and 6 months. This will close up the old account in a manner satisfactory to us; will give you a stock and enable you to collect in your debts, and in the fall be in a good condition to make your season purchases. We regret very much to have to write you in this way, but both prudence and our judgment dictate that it is the proper course for us to pursue. We send statement of drafts, which please have accepted, and when, if you still desire, we will fill your order to the amount named."

The four enclosed drafts, three of which are in suit, the other having been since paid, were signed by Davidson and presented to the defendant, Carter, for an accommodation acceptance, which he refused, and after being shown the plaintiff's letter still refused, unless A. T. Davidson, the

father of the drawer, would unite with him in accepting the drafts. Thereupon the debtor also applied to his father exhibiting the letter to him also, and upon the faith of the assurances and promises contained therein, the drafts received the signatures of both.

These drafts covering the entire indebtedness were transmitted to the plaintiffs on April 27th, in a letter reciting the plaintiffs' offer of a limited credit—that goods were needed in the prosecution of the debtor's business to the amount of four or five hundred dollars—and renewing the order mentioned in the first application.

The plaintiff firm was dissolved on April 30th by the withdrawal of the senior partner, Hull, and the others left in charge of its effects declined to send the goods required, and after the interchange of several communications on the subject, one of the remaining members on his individual responsibility forwarded a package of sixty prints, mentioned in the order, of the value of $168, on the 11th day of May.

Davidson failed in business in August, and his stock of goods was seized by the sheriff under executions issued to him. In the summer of 1877, Davidson became an invalid and died in the ensuing fall.

It was in evidence that, since the action was brought, in a conversation between the defendant A. T. Davidson and the partner, Lanier, to an inquiry of the former why the drafts were not returned when the firm refused to furnish the goods, the said Lanier answered that, "they never yielded any advantage which they had obtained."

It does not appear that the plaintiffs knew of the exhibition of their letter to Davidson, to the defendants, or to either; or that the acceptance by them was superinduced or in any manner influenced by what is therein written.

These are the material facts found by the judge, the par-

ties waiving a trial by jury, and upon them he gave judgment against the plaintiffs and they appealed.

*Mr. James H. Merrimon*, for plaintiffs.
*Messrs. C. A. Moore, Reade, Busbee & Busbee* and *Battle & Mordecai*, for defendants.

SMITH, C. J., after stating the above. It is manifest that whatever wrong may have been done by the denial of the credit to the extent asked, and the breach of faith and fair dealing in the refusal, it was personal to the debtor, and the damage, if any, resulting therefrom to the defendants, indirect and remotely consequential. It was the unauthorized use of the plaintiffs' letter accompanied, as we must infer, with the debtor's representation of his ability, with the aid of further supplies of goods and the postponement of his existing debt, to bridge over his present embarrassments and ultimately meet all his obligations, which induced the defendants to come to his relief and accept the drafts. It is difficult to conceive how the withholding goods, in excess of the value of those sent, up to the limits specified in the letter, could be the efficient and primary cause of the financial troubles that so soon after ended in total insolvency, and the seizure of the stock under process sued out by other creditors, or how the full promised supply could have averted the disaster and saved the defendants from loss by reason of their suretyship.

But whatever effect may be attributed to the plaintiffs' violation of the terms of their agreement, on condition of the security to be given for their claim, and whatever the expectations of the defendants founded upon their confidence in the capacity of their principal, thus assisted, to discharge the assumed obligation and relieve them of their liability, they were not induced to accept the drafts from any communications addressed to themselves, or any assur-

ances intended to be communicated to influence their action in the premises. There has been no transaction *between the parties* to this suit, in which is contained an element of fraud, the fruits of which in consequence the law will not permit the party practicing it to receive.

If the defendants have been misled by the representations made to their principal and shown to them, it was not the intention of the plaintiffs, so far as the evidence appears, that they should be; and an intention to deceive the party who is deceived is an essential element in a fraud, which vitiates the contract into which it enters, and releases from its obligations.

"Fraud cannot exist, as a matter of fact," remarks NASH, J., "where the intent to deceive does not exist, for it is emphatically the action of the mind which gives it existence." *Tilghman* v. *West*, 8 Ired. Eq., 183 ; *Saunderson* v. *Ballance*, 2 Jones Eq., 322 ; Kerr on Fraud and Mistake, 55.

It was said in the argument that the ruling in the court below was controlled by an adjudicated case which the counsel were unable to cite, and in our researches we have been unsuccessful in finding. In the absence of authority and from our own reasoning, we cannot perceive sufficient legal grounds for the proposition maintained and necessary to the defendants' exoneration, that a violated promise to the debtor, communicated by him without the knowledge or assent of the creditors, can operate as a fraud practiced upon the defendants and made available to discharge them from their contract of suretyship. And it would be a singular result, that an assurance of a credit varying in value from $32 to $132, and its denial, should have the effect of destroying another contract, superinduced by it, for the payment of some $650. In our opinion the fact found by His Honor that the defendants united in their acceptances "upon the faith of that letter and upon no other considera-tion" is insufficient to discharge them from their voluntary

undertaking. If the plaintiffs' conduct and disregard of their promise furnish a cause of action and a claim for damages to the debtor or to his sureties, it is but a counterclaim, measured by the extent of the consequential injury, and does not annul the contract of the sureties.

There is therefore error in the ruling of the court, and the judgment must be reversed, and a new trial awarded. Let this be certified.

Error.  *Venire de novo.*